UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMY KYLE CLARK,

    Applicant,

v.                                                    CASE NO. 8:15-cv-897-T-23SPF

SECRETARY, Department of Corrections,

    Respondent.

                                          /

## **O R D E R**

      Clark applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for three counts of attempted sexual battery involving a victim less than twelve, two counts of lewd molestation involving a victim less than twelve, and one count of lewd exhibition involving a victim less than sixteen, for which convictions Clark is imprisoned for thirty years. The convictions are based on a plea agreement. The respondent moves (Doc. 5) to dismiss the application as time-barred. Clark opposes dismissing his action. (Doc. 12) In his underlying paper, Clark admits his application's untimeliness, but "avers a miscarriage of justice would result if his claims were not entertained on their merits." (Doc. 1 at 10)

      Clark asserts entitlement to the "miscarriage of justice" exception to the limitation. The miscarriage of justice exception and the actual innocence exception are the same exception. *See Sawyer v. Whitley*, 505 U.S. 333, 333 (1992) ("The

miscarriage of justice exception applies where a petitioner is 'actually innocent' of the crime of which he was convicted."); *Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence."); *House v. Bell*, 547 U.S. 518, 537 (2006) (using both miscarriage of justice and actual innocence to describe the same exception).

Clark bears the burden of proving that he did not commit the criminal offense for which he is imprisoned. Although Clark can challenge his conviction if he can show that he is "actually innocent" of the offense, actual innocence is not a separate claim that challenges the conviction but a "gateway" through which a defendant may pass to assert an otherwise time-barred or procedurally barred federal claim.[*] Passage through the gateway is difficult because "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The gateway is narrow and opens "only when a

---

[*] Clark asserts no claim of actual innocence as a "free standing" claim, but only as a means of escaping the limitation's bar. The Supreme Court has never recognized the existence of a "free standing" claim. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.") (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)).

petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin, Warden, v. Perkins*, 569 U.S. 383, 401 (2013) (quoting *Schlup v. Delo* 513 U.S. 298, 316 (1995)).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). *House v. Bell*, 547 U.S. 518, 538 (2006) (internal citation omitted), explains that the applicant's burden, although demanding, is not absolute proof of innocence:

> [I]t bears repeating that the *Schlup* standard is demanding and permits review only in the "extraordinary" case . . . . At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

A sufficient showing of actual innocence can overcome the limitation bar, as *Perkins*, 569 U.S. at 386–87 (brackets original), explains:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House,* or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup,* 513 U.S., at 329, 115 S. Ct. 851; see *House,* 547 U.S., at 538, 126 S. Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of

> th[e] evidence" purporting to show actual innocence. *Schlup,*
> 513 U.S., at 332, 115 S. Ct. 851.

Clark contends that the victim was twelve — not less than twelve — and, as a consequence, he is innocent of the convictions for attempted sexual battery and lewd molestation involving a victim less than twelve. This issue was the subject of an evidentiary hearing in a state post-conviction proceeding. As 28 U.S.C. § 2254(e)(1) explains, "[a] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The post-conviction court denied relief in a written opinion, which includes the following summary of the testimony and the court's findings (Respondent's Exhibit C7 at 141–43):

> At the Evidentiary hearing the Court heard from trial counsel of record, Douglas Jackson, Esquire, who represented the Defendant, and from the Defendant, Jeremy Clark. . . . Mr. Jackson reported that the Defendant vehemently contested the age of the child, but did not deny that he had a sexual relationship with the child. He further testified that at no time did the Defendant give an explanation as to why he believed the child was 12 years of age or older. Mr. Jackson also testified that the Defendant had confessed to law enforcement, and that he would have had to depose the victim to verify the victim's age at the time of the offense. Mr. Jackson stated he could not recall if he filed a Motion for Statement of Particulars, but he did not believe it would have accomplished the goal of narrowing down the victim's age. Mr. Jackson reported that he did not depose the witness as the Defendant was adamant he did not want to depose the witness and because the State would have revoked all offers if he had taken the victim's deposition. Mr. Jackson reports that he met with the Defendant approximately eight times during the course of the representation. On all of the occasions the Defendant indicated that he did not want to go to trial, he did not want to put the victim through a trial and he did not want to take the chance of going to trial and losing.

Mr. Clark testified . . . that be told Mr. Jackson that he did not
believe the child was under the age of 12. At the time of the
Evidentiary hearing he testified he reached this belief based on
a letter the victim had written explaining when the events
occurred, [which] had been provided both to his attorney
and to the State. He explained that the time frames contained
within the victim's letter regarding his work history suggested
to him that at the time the incident occurred the victim had
already reached the age of 12. Though Mr. Clark indicates he
put two and two together, he did not do so until after he entered
the plea. He acknowledges at no time did he explain to Mr.
Jackson as to why he believed the victim was 12 and older and
did not inform Mr. Jackson about his theory of his work history
substantiating his beliefs. Mr. Clark reported that he asked Mr.
Jackson to file a Statement of Particulars and that Mr. Jackson
told him he was not going to do it and that if he did so he could
lose any offers. Mr. Clark acknowledged telling Mr. Jackson he
did not want a trial and he did not want to depose the victim
because he did not want to re-victimize her. He further testified
that he did want Mr. Jackson to deposition everyone else that
was possible, but was told that any depositions would cause the
State to revoke all offers. . . . The Defendant admitted that he
agreed his confessions to police would be used against him and
that if convicted at trial he understood he could have received a
life sentence. . . . The Court rules as follows:

[T]he Court finds the testimony of Mr. Jackson credible.
The Court recognizes that the State Attorney's Office policy
in this jurisdiction is to revoke all offers in child sex cases
once the deposition of the victim has been taken. Mr. Jackson
testified he could not recall whether he had filed a Statement
of Particulars, but he did not believe a Statement of Particulars
would have accomplished the goal the Defendant wished
to flush out [*sic*] whether the victim was 12 years of age or
younger. The Court determines that a request for a Statement
of Particulars in this case would not have required the State to
narrow the time frame down to any more specific window. The
only tool for doing so would have been to take the deposition of
the victim. Based on the local State Attorney's office policy in
this jurisdiction and given that there was a confession by the
Defendant, had all offers been revoked, there would have been
an extremely high likelihood the Defendant would have been
convicted at trial and thereby subjected to a sentence of life in
prison. . . . By the Defendant's own testimony he did not want

> a trial and was simply hoping for a better deal, but was unable
> to receive the deal that he wanted.

The state court's findings are bolstered by Clark's admissions in his "Motion to Mitigate and Reduce Sentence," which he filed a week after sentencing and in which he admits the following (Respondent's Exhibit B1 at 1):

> I do have a confession on what did take place, because I do
> feel what was done is wrong. However, I've been trying for
> months to counteroffer for a deal to stay within guidelines,
> but looking for a little mercy with it at the same time. The
> reason I took the deal is because I did not want this to go to
> trial. Two reasons. One, the victim has been though enough
> and I wouldn't dare put her through depositions. I truly do care
> for her, and love her with all of my heart. Two, I'm guilty. Yes,
> there are discrepancies with the alleged age, which I have been
> trying to prove since day one. However, the only way to do that
> was to go to trial. So I did not succeed.

Clark's evidence to prove entitlement to the "miscarriage of justice" or "actual innocence" exception to the limitation is a time-line that he contends shows that the crimes occurred during the summer of 2007, when the victim was twelve. (Doc. 1-3 at 12–13) Clark's belief about the victim's age derives from both information in the victim's letter and his summer-time employment history. Clark knew all of this information before he pleaded guilty; Clark pleaded guilty knowing that the victim's age — whether less than twelve or actually twelve — was uncertain.

To summarize, Clark confessed to having sexual relations with the child, wanted to neither have a trial nor have the victim deposed, and knew there was a question about the child's age. Clark presents no new reliable evidence of innocence that is so strong that "no juror, acting reasonably, would have voted to find him

guilty beyond a reasonable doubt." *Perkins*, 569 U.S. at 386.  Clark's argument amounts to no more than a claim of insufficiency of the evidence to convict him of the charged offense, which claim he could have timely raised within the one-year limitation.

Accordingly, Clark's application (Doc. 1) is **DISMISSED AS TIME-BARRED**.  The clerk must enter a judgment against Clark and close this case.

## DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Clark is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Clark must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because the application is clearly time-barred, Clark is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Clark must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on August 16, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE